UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 16cr265 (LMB) |
| | ) |
| | ) |
| NICHOLAS YOUNG, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT NICHOLAS YOUNG'S MEMORANDUM IN SUPPORT OF MOTION TO
SUPPRESS ITEMS UNCONSTITUTIONALLY SEIZED FROM HIS RESIDENCE,
<u>BACKPACK, PICKUP TRUCK, AND WORPLACE LOCKER</u>**

**DAVID B. SMITH, PLLC**

David B. Smith (VA Bar No. 25930)
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (admitted *pro hac vice*)
7 East 20th Street
New York, NY 10003
Phone: (917) 722-1096
nds@davidbsmithpllc.com

## <u>TABLE OF CONTENTS</u>

I.   BACKGROUND ................................................................................................. 3

   A.   The Searches of Mr. Young's Home, Truck, Backpack, and Locker ................................. 3

   B.   Defense Counsel's Multiple Requests for Notice of the Government's
        Evidence .................................................................................................... 6

   C.   The Government's Position on Forfeiture of the Firearms Is Inconsistent
        with Its Search Warrant Applications ............................................................... 7

II.  ARGUMENT ..................................................................................................... 8

   A.   The Legal Standard for Suppression of Unconstitutionally Seized Items .......................... 8

   B.   The Search Warrant Applications Did Not Provide Probable Cause to Seize
        "Any and All Firearms" and Related Items ......................................................... 9

   C.   The Search Warrant Applications Did Not Furnish Probable Cause to Seize
        Sweeping Categories of "All Documents and Records" ........................................... 14

   D.   Various Unduly Prejudicial Items Seized Outside the Scope of the Warrants Should
        Be Suppressed ............................................................................................ 19

III. CONCLUSION ................................................................................................ 19

Defendant Nicholas Young, through his undersigned counsel, moves the Court to suppress dozens of objects, documents, records, and communications unconstitutionally seized from his home, backpack, pickup truck, and workplace locker following his arrest on August 3, 2016.

The government's underlying warrant applications represented that these sweeping searches and seizures were designed to collect evidence of Mr. Young's alleged purchase of gift cards, later given to an undercover agent posing as a "friend" who had pretended to join ISIS in Syria. In truth, the searches had a separate purpose. They were almost certainly conducted to find evidence of additional crimes for which the government found no support in its over-five-year undercover investigation into Mr. Young's life. And after ransacking his personal possessions and communications – knocking to the ground the ashes of Mr. Young's father, breaking windows when Mr. Young provided them keys to the door, and boring into the ceiling of his home – they found no evidence of terrorism crimes that were not induced by the government itself.

That the purpose of these searches was an unconstitutional fishing expedition can be seen on the face of documents filed before any search was conducted. On August 2, 2016, the government filed an affidavit in support of its criminal complaint in which it set forth pages of information to establish its allegation that Mr. Young sent the gift cards to an undercover agent. ECF 2, pp. 14-16. (That the government represented it *already* possessed such evidence would stand to reason, as it was the government itself that asked Mr. Young to send the gift cards.) Even more telling: when Mr. Young was arrested at work on August 3, 2016, the government represented it conducted a search-incident-to-arrest of his backpack, in which it found receipts

from an electronics store in Fairfax, Virginia for the purchase of the gift cards, the gravamen of

the indictment.  ECF 38.

And yet, it was putatively to find evidence of *the gift-card charge* that the government

sent no fewer than 30 FBI agents to scour Mr. Young's home for over two days, seizing such

indiscriminate categories of information as:

- "all records and documents [] that concern the international transfer of money or assets";

- "all records and documents referring or relating to past travel or planned travel by Nicholas Young";

- "any and all records, documents, invoices and materials that concern *any accounts with any internet service provider*";

- "All contact lists [] of individuals associated with Nicholas Young….";

- "Any and all firearms, ammunition, body armor, military-style equipment ….";

- "Any communications or electronic device capable of storing any of the items to be seized, including but not limited to *all cellular phones, smart phones, electronic data processing and storage devices, computers and computer systems, keyboards, and other associated peripherals, Central Processing Units, external and/or internal drives, portable drives . . . .*"

These search warrant categories would be facially infirm in their overbreadth in any

criminal context.  That their justification rested on the collection of evidence the government

already admittedly possessed renders them even more egregiously unparticularized.  And the

searches and seizures suffered from other constitutional flaws.  Various unduly prejudicial items

were seized outside the scope of those already "general warrants."  Although these items serve

no purpose beyond tarring Mr. Young's reputation with the jury, the government has committed

to attempting to use them at trial.

All these documents and objects should be suppressed, pursuant to Fed. R. Crim. P.

12(b)(3)(C), for the following reasons.

2

# I.      BACKGROUND

## A.      The Searches of Mr. Young's Home, Truck, Backpack, and Locker

Mr. Young has no criminal history.  There is no evidence he unlawfully acquired firearms or ammunition.  In this case, he has been charged with no violent acts whatsoever, but instead with sending gift cards to an undercover agent posing as a different undercover "friend" who pretended to join a foreign terrorist organization (FTO) in Syria.  ECF 38 (also charging Mr. Young with the nonviolent offense of obstruction of justice).

Before conducting searches of his home, backpack, pickup truck, and workplace locker, the government represented it already possessed ample evidence that Mr. Young sent the gift cards to the agent.  ECF 2, pp. 14-16.  Further, in a *nunc pro tunc* search warrant application for Mr. Young's backpack, the government represented to this Court that in a search-incident-to-arrest on August 3, 2016, it found receipts for the purchase of the gift cards in Mr. Young's backpack.  (Declaration of Nicholas D. Smith ("Smith Decl."), Exh. 2, p. 3.)

Yet, the search warrant applications filed with the Court justified the sweeping categories of seizures, outlined *supra* on page 2, by citing the government's need to find evidence of the gift card charge.  (Smith Decl., Exh. 1-6.)  With respect to the seized documents and records pertaining to travel, international transfers of money, any account with any service provider, contact lists, and all electronic devices, the warrant affidavits failed to explain why there was probable cause to believe such broad categories of information all pertained to the gift-card charge.  (Smith Decl., Exh. 1-6.)  Nor did the affidavits explain why, in light of receipts for the gift cards found in Mr. Young's backpack, such sweeping searches were necessary or even relevant.  (*Id.*)  Nor did the affidavits cite a factual basis to find probable cause of any terrorism-related crime beyond the alleged gift-card distribution induced by the government itself. (*Id.*)

3

As for the category of "any and all firearms, ammunition….," the warrant applications do not supply any factual bases to support a probable cause determination that all of these items – or indeed even some of them – are evidence of a specific crime or constitute contraband. (Smith Decl., Exh. 1-6.) For example, they do not state that the "[a]ny and all firearms, ammunition…." were illegally acquired or possessed. (*Id.*) Nor do the affidavits provide any factual basis to support a probable cause determination that these items are somehow linked to the cited charges of attempting to provide material support to a FTO (18 U.S.C. § 2339B), obstruction of justice (18 U.S.C. § 1512), and false statements (18 U.S.C. § 1001). (*Id.*)

In the affidavit in support of the search warrant for Mr. Young's home, there is one sole fact cited that may conceivably relate to the seized firearms and related objects. (Smith Decl., Exh. 1, ¶ 5.) The affidavit states that a "CW" – confidential witness – who "had been at Young's residence on many occasions" represented to the FBI that Mr. Young maintained "several firearms" at his residence and that he once had a conversation with the CW about the "chemical components of gunpowder." *Id.*[1] No facts are offered to support the reliability the CW's statements concerning gunpowder, nor does the affidavit even state the FBI found the CW credible. *Id.*

The search warrant affidavits incorporate by reference the affidavit filed on August 2, 2016 in support of the criminal complaint. (Smith Decl., Exh. 1, 2.) This separate affidavit does not link "any and all firearms, ammunition…." to any charges against Mr. Young. ECF 2. (Nor does it provide probable cause for the seizure of *all* documents and records pertaining to travel, *all* international transfers of money, *any* account with any service provider, *all* contact lists, and

---

[1] With the Court's permission, Mr. Young is prepared to submit a sworn declaration stating that the CW had not "been at [his] residence on many occasions," and mischaracterizes their conversation concerning the "chemical components of gunpowder" – a conversation *initiated by the CW.* In fact, the CW bears a personal grudge against Mr. Young, a fact not likely to be unknown by investigating agents given the nature of CW's prior relationship to Mr. Young.

*all* electronic devices. *Id.*)   The affidavit does allege that an unidentified undercover law enforcement officer (UCO) represented (not under oath) that Mr. Young once told him, some five years before the search warrant applications were submitted, that he (Mr. Young) aimed a rifle out of his window on one occasion; that Mr. Young once said that if someone betrayed him, he would take physical revenge on them; that the FBI and courthouse were vulnerable to an attack by some party, although not specifically by Mr. Young himself; that Mr. Young once "spoke about the fundamentals of marksmanship"; and that the unidentified UCO reported to the government that Young once remarked that if law enforcement searched his home, they would find weapons and that is what they were there for.  ECF 2, pp. 3-6.  The government does not allege that any of these comments or actions constitute criminal acts, or that Mr. Young harbored any plan to make good on them.  Indeed, somewhat unusually, the affidavit specifically acknowledges that the "UCO reported that UCO doubted that Young seriously intended to act upon those words." ECF 2, p. 5.

As a result of these "general warrant" authorizations, during its raid of Mr. Young's property and premises the government duly seized a laundry list of firearms, "a plastic sword," ammunition, military collector's items, miscellaneous gun parts, a glass axe, a pepper spray ring, an Israeli gas mask (collector's item), gun paraphernalia, body armor, historical war memorabilia and uniforms, compasses, gun receipts, rifle magazines, Army surplus clothes, a military jacket, a "military sleeping mat," camouflage hats, and similar items.

The government also seized a number of items that bear no connection to the list of authorized seizures in Attachment A to the search warrants.  (Smith Decl., Exh. 1-6.)  Nor do these documents and objects have any relevance to this material-support-for-terrorism case.  For

5

example, the government seized various documents and objects pertaining to the Nazis[2]; a "Guy

Fawkes newspaper clipping"; and a "confederate flag w/ picture of dog in center."

### B.   Defense Counsel's Multiple Requests for Notice of the Government's Evidence

On December 19, 2016, defense counsel delivered a letter to AUSA Gordon Kromberg –

pursuant to Fed. R. Crim. P. 12(b)(4)(B) –  requesting that the government provide notice of its

intent to use (in its case-in-chief at trial) any and all evidence that Mr. Young may be entitled to

discover under Rule 16, including items seized from his residence, truck, backpack, phones,

locker and email accounts.  (Smith Decl., Exh. 7.)  The letter notified the government that Mr.

Young requested this information "in order to have an opportunity to move to suppress evidence

under Rule 12(b)(3)(C)."  *Id.*

AUSA Kromberg did not respond to the December 19 letter.  Accordingly, on January

16, 2017, undersigned counsel emailed AUSA Kromberg and reiterated their Rule 12 notice-of-

intent-to-use-evidence request. On January 17, AUSA Kromberg responded as follows:

> You have requested to know what evidence that we are likely to use so
> that you can make such motions to suppress as you see fit.  Off the top of
> my head (and not waiving any right to try to admit more types of evidence
> later), you should assume that we will at least be using evidence seized
> from your client's person at the time of his arrest, the backpack he was
> carrying at the time of his arrest, his residence, his vehicle, his phones, and
> his essakobayashi and maliktheamerican email accounts.

Because hundreds of items, falling under dozens of categories, were "seized from

[Nicholas Young's] person at the time of his arrest, the backpack he was carrying at the time of

---

[2] These include: Six books: Hell on the Eastern Front; Illustrated History of the Third Reich; Loyalty is
My Honor; SS The Blood Soaked Soil; The SS: Hitler's Instrument of Terror; Hitler's Renegades; Nazi
posters, pictures, pamphlets, and postcards; a "racial hygiene book"; "one book Adolf Hitler w/ Arabic
writing"; "German AD military flag"; "German camouflage jackets"; "Nazi knife with sheath"; "sign
with Nazi ensignia and German writing"; "small booklet in German and KKK imagery on paper
advertising white power music"; CD containing photos of "males dressed like Nazis"; "two metal crosses
and one military style ribbon"; and "Nazi" [sic] belt buckle with words "Wehrmacht-Eigentum."

his arrest, his residence, his vehicle, his phones, and his [] email accounts," defense counsel on January 17 asked AUSA Kromberg to clarify whether his Rule 12(b)(4)(B) response was that the government intends to use at trial *all items collected from every search.* AUSA Kromberg did not respond to this written request.

On January 20, 2017, undersigned counsel sent a third request for the "broad categories of evidence intended for trial which we requested under Rule 12 (categories, not itemized evidence, at least whether you will use Nazi stuff and guns)." AUSA Kromberg did not respond to this request.

In a subsequent phone call with AUSA Kromberg, he informed undersigned counsel that the government's Rule 12(b)(4)(B) response is that it intends to use every item collected from every search. (Smith Decl., ¶ 2.) In a later communication, AUSA Kromberg acknowledged that even if Mr. Young's FISA suppression motion is denied, that would not moot this suppression motion to the extent it concerns documents, objects and records that were not seized until the August 2016 searches (as opposed to the prior FISA-based searches). (*Id.*, ¶ 3.).

### C. The Government's Position on Forfeiture of the Firearms Is Inconsistent with Its Search Warrant Applications

The government served a notice of seizure for civil forfeiture for eighteen firearms seized from Mr. Young's home following his arrest. (Smith Decl., Exh. 8.)

On September 30, 2016, undersigned counsel requested the government's theory of forfeiture, noting that there did not appear to be any connection between the firearms and the alleged terrorism offense involving gift cards. In an acknowledgment of the force of this position, the government decided not to seek forfeiture after Mr. Young filed an administrative claim with the FBI. Thus, the government no longer contends it is entitled to forfeit the firearms on the basis of a factual nexus between the firearms and the charged terrorism crime.

7

This position is inconsistent with a determination that the search warrant affidavits for Mr. Young's residence, truck, backpack, and locker supplied probable cause that the firearms were evidence of the charged terrorism offense or were illegally acquired or possessed.

## II.     ARGUMENT

### A.     The Legal Standard for Suppression of Unconstitutionally Seized Items

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV.  "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 95, 126 S. Ct. 1494, 164 L. Ed. 2d 195 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).

"At its core, the Fourth Amendment protects against general warrants that authorize 'exploratory rummaging in a person's belongings . . . by requiring a particular description of the things to be seized.'" *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010) (*quoting Andresen v. Maryland*, 427 U.S. 463, 480, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976)).  Thus, to be valid, the search warrant must not only be predicated on probable cause of contraband or evidence of a crime in a particular place, but also must provide probable cause that the particular items to be seized are evidence of a crime or contraband.  *Groh v. Ramirez*, 540 U.S. 551, 557 (2004).  This "particularity requirement" is satisfied "when the warrant identifies the items to be seized *by their relation to designated crimes* and when the description of the items leaves nothing to the discretion of the officer executing the warrant." *Williams*, 592 F.3d at 519 (emphasis added); *see also United States v. Legg*, 18 F.3d 240, 242 (4th Cir. 1994) (a search

warrant must "particularly describe" items to be seized); *see also United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986) (Kennedy, J.)  (in determining whether a warrant's description is sufficiently specific, the following questions are considered: (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued).

As a corollary, when a search is conducted pursuant to a warrant, it "is limited in scope by the terms of the warrant's authorization." *United States v. Phillips*, 588 F.3d 218, 2009 WL 4061558, at \*4 (4th Cir. 2009); *see also Walter v. United States*, 447 U.S. 649, 656, 100 S. Ct. 2395, 65 L. Ed. 2d 410 (1980) (plurality opinion); *United States v. Squillacote*, 221 F.3d 542, 555 (4th Cir. 2000).  Thus, if documents or objects not covered by the warrant are improperly seized, "the government should promptly return [them] or the trial judge should suppress them." *Williams*, 592 F.3d at 520 (*citing Andresen*, 427 U.S. at 482 n. 11).  And "[w]hile the constitutional protection cannot demand perfection, any tolerance of imperfection does not give officers 'free reign to ransack and take what they like.'" *Williams*, 593 F.3d at 520 (*quoting Phillips*, 588 F.3d 218, 2009 WL 4061558, at \*9).

## B.  The Search Warrant Applications Did Not Provide Probable Cause to Seize "Any and All Firearms" and Related Items

The search warrant applications failed to cite any criminal history for Mr. Young, failed to contend that any firearm, piece of body armor, ammunition, or military-style equipment owned by Mr. Young was obtained illegally (much less all of them together), and failed to link any of these items to the charged gift-card crime, or obstruction of justice charge.  (Smith Decl., Exh. 1-6.)  Accordingly, the warrants' authorization to seize "*"[a]ny and all* firearms,

ammunition, body armor, military-style equipment, or explosive material or their precursors" did not satisfy the "particularity requirement." To the contrary, these warrants epitomize the "general warrants" proscribed in by the Fourth Amendment.  All such objects must be suppressed. *Williams*, 592 F.3d at 519.

A case in point is *Millender v. County of Los Angeles*, 620 F.3d 1016 (9th Cir. 2010) (en banc) *rev'd on other grounds*, *Messerschmidt v. Millender*, 565 U.S. 535 (2012).  There, twelve judges on the Ninth Circuit held (over the dissent of two judges) that a search warrant authorizing the seizure of "any and all firearms and ammunition" from the defendant's home was insufficiently particularized.  *Millender*, 620 F.3d at 1025-29.  The Los Angeles County Sheriff's Department had applied for a warrant to search the home of a man who had assaulted his girlfriend.  *Id.* at 1020.  The warrant application noted the assault, that police agency records indicated the man had ties to the Mona Park Crip gang, that he lived at the residence in question, and that the victim told the Sheriff's Department that the man owned a black sawed-off shotgun with a pistol grip, which he fired at the victim during the assault.  *Id.* (The Sheriff's department also had evidence showing the man's history of violence and prior felony convictions but these were negligently omitted from the search warrant application, *id.* at 1028.)

The Ninth Circuit held that the search warrant's authorization to seize the black sawed-off shotgun was sufficiently particularized but *not so* its authorization to seize "any and all firearms and ammunition." 620 F.3d at 1025-27.  In so doing, the court rejected a number of potential arguments relevant to the searches of Mr. Young's property and premises:

- "[T]he warrant in this case authorizes a search for essentially any device that could fire ammunition, any ammunition, and any firearm-related materials. There is no dispute that the deputies had probable cause to search for and seize the 'black sawed off shotgun with a pistol grip' used in the crime. But the affidavit does not set forth any evidence indicating that Bowen owned or used other firearms, *that such firearms were*

10

*contraband or evidence of a crime*, or that such firearms were likely to be present at the Millenders' residence. *Nothing in the warrant or the affidavit provides any basis for concluding there was probable cause to search for or seize the generic class of firearms and firearm-related materials listed in the search warrant.*" 620 F.3d at 1025 (emphasis added).

- "The [Sheriff's Department] argue[s] that it was reasonable for the warrant to authorize a broad search for firearms and firearm-related materials because [the man] is a violent and dangerous person. The [Department] draw[s] attention to facts in the affidavit showing that [the man] was suspected of assault with a deadly weapon, was a gang member, and that night service was requested to protect the public. . . . There is no doubt that the [Department] ha[s] a valid interest in protecting themselves and the public from potentially violent and dangerous suspects. . . .

  But there is no 'dangerousness' exception to the Fourth Amendment's probable cause requirement, regardless of whether a search involves violent suspects or deadly weapons. A police officer's valid safety concerns do not create a 'fair probability' that a broad class of weapons may be found in a suspect's residence or that such items are contraband or evidence of a crime. *See Grubbs*, 547 U.S. at 95. The deputies cite no case, and we have found none, holding that a warrant's overbreadth could be cured simply because of potential danger to police officers at some point in the future. Indeed, such a rule would permit officers to transform every warrant into a 'general, exploratory search []' allowing 'indiscriminate rummaging through a person's belongings.' *Spilotro*, 800 F.2d at 963; *see also Groh*, 540 U.S. at 561. Nor is there a per se rule that police have probable cause to search the residences of ex-felons for firearms and firearm-related items." 620 F.3d at 1029.

- The [Department] argue[s] they were justified in seeking all firearms and firearm-related materials because such materials could aid in the prosecution of [the man]. Again, this argument is unrelated to the constitutional requirement that there be probable cause for each item described in the warrant. Although the deputies likely had probable cause to search for a limited range of firearm-related material that would have provided circumstantial evidence of ownership of the sawed-off shotgun at issue, such as receipts or compatible ammunition, the warrant extended beyond such evidence to '[a]ny firearm capable of firing or chambered to fire any caliber ammunition.' Put simply, the Fourth Amendment does not authorize the issuance of warrants to conduct fishing expeditions to find evidence that could assist officers in prosecuting suspects." 620 F.3d at 1030.

11

*Millender* also addressed the question whether the officers who conducted the search of the home enjoyed qualified immunity.  620 F.3d at 1031.  While that portion of the decision was reversed by the Supreme Court, the Ninth Circuit's determination that the warrant was overbroad and unparticularized was not reversed.  *Messerschmidt*, 565 U.S. 535, 545 (2012) ("The validity of the warrant is not before us.").  The Supreme Court merely determined that the search warrant was not "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 547.  Nonetheless, two dissenting justices found that the "any and all firearms and ammunition" warrant formulation was so clearly "antithetical to the Fourth Amendment" that even qualified immunity was unwarranted.  *Messerschmidt*, 565 U.S. at 561 (Sotomayor, J., Ginsburg, J., dissenting).

The logic of *Millender* applies with extra force in this case.  Not only are the warrants in this case overbroad and unparticularized in their authorization of the seizure of "all firearms and ammunition" (and related materials), Mr. Young, unlike the man in *Millender*, has *no* criminal history and is not even charged with a crime relating to firearms or violence.  Nor does Mr. Young have any history of violence or association with criminal gangs, like the man in *Millender*.  Unlike in *Millender*, where the police at least knew they were looking for a contraband black sawed-off shotgun, law enforcement in this case failed to establish probable cause that *any specific firearm or related paraphernalia* should be seized as evidence of a crime. Moreover, when the firearms and related materials were seized during the search of Mr. Young's house, he had already been arrested and thus did not even pose a hypothetical risk to the public or law enforcement.  In short, the warrant in *Millender* was a model of particularized probable cause compared to the warrants here.

12

In this case, the government's argument for ransacking Mr. Young's property and premises may fairly be reduced to this phrase: "Because Terrorism." That is not sufficient. And there are many other dangerous crimes under the sun that do not justify bending the Fourth Amendment. *See Spilotro*, 800 F.2d at 965 (warrant based on an affidavit describing "a few stolen diamonds" could not validly authorize a search for a broad category of "gemstones and other items of jewelry" because such a warrant would "provide [] no basis for distinguishing [the stolen] diamonds from others the government could expect to find on the premises."); *United States v. Stubbs*, 873 F.2d 210, 211 (9th Cir. 1989) (probable cause to search for documents pertaining to "certain aspects of [an] operation" cannot justify the seizure of all documents in an office); *United States v. Barnes*, 749 F. Supp. 2d 1124, 1134 (D. Idaho 2010) ("Under these circumstances, there was probable cause to search for a specific, silver revolver type handgun — and perhaps a sawed-off shotgun. But there was nothing in the affidavit to form a basis for concluding there was probable cause to search and seize a generic class of firearms, knives and instrumentalities of injury."); *United States v. Lemons*, 153 F. Supp. 2d 948, 960 (D. Wis. 2001) ("[A]mmunition alone cannot be considered contraband. Therefore, the government must prove the officers had probable cause to believe the bullets were linked to some criminal activity."); *United States v. Borno*, 946 F. Supp. 972, 977 (M.D. Fla. 1996) (suppressing handgun found in residence because while drugs were found in the residence, nothing indicated any link between that gun and the drugs such that the officers had probable cause to seize the gun); *United States v. Bater*, 830 F. Supp. 28, 39 (D. Mass. 1993) ("[U]nder ordinary circumstances, the government cannot simply seize property, which may be legally possessed, without any reason to believe it is not so, even if that property is a weapon. The regulatory regime for firearms registration does not make weapons and ammunition, standing alone, contraband."); *United States v. Savides*, 664 F.

Supp. 1544, 1549 (N.D. Ill. 1987) (Although police certainly had the authority to secure the firearms while conducting their search, seizure without probable cause to believe they were fruits, evidence or instrumentalities of a crime was not permissible); *U.S. v. Owen*, 621 F. Supp. 1498 (D. Mich. 1985) (same).

Moreover, as discussed above, the government initiated and withdrew a civil forfeiture claim for eighteen firearms seized from Mr. Young's home.  (Smith Decl., Exh. 8.)  After defense counsel noted there did not appear to be any connection between the firearms and the alleged terrorism offense involving gift cards, the government retracted the claim.  This position is inconsistent with a determination that the search warrant affidavits for Mr. Young's residence, truck, backpack, and locker supplied probable cause that the firearms were evidence of the charged terrorism offense.

All the firearms, ammunition, body armor, and military-style equipment should be suppressed because there was no factual support in the warrant applications to find probable cause they were contraband or evidence of a crime.

### C.    The Search Warrant Applications Did Not Furnish Probable Cause to Seize Sweeping Categories of "All Documents and Records"

Before even searching Mr. Young's home, his truck, and his locker, the government represented it had already found receipts in his backpack indicating purchases of the gift cards that are the gravamen of the indictment.  (Smith Decl., Exh. 2, p. 3.)  And before any search was conducted, the government had represented it possessed ample evidence that Mr. Young had purchased and sent the gift cards to the government's own agent.  ECF 2, pp. 14-16. Accordingly, the search warrant applications did not (and could not) provide factual bases to support a probable cause determination that these entire categories of information – *unbound by any date restrictions* – constituted evidence of the gift-card charge: *all* documents and records

pertaining to travel, international transfers of money, *any* account with any service provider,

contact lists, and *all* electronic devices.[3]  (Smith Decl., Exh. 1-6.)

        As with "all firearms" (*supra* Section II.B), so too with "all documents and records."

That certain *specific* documents and records may have constituted (evidently superfluous)

evidence of the gift-card crime does not justify a blunderbuss "general warrant" for entire

categories of documents and records, from any time period, and decoupled from any specific

terrorism crime.  *Millender*, 620 F.3d at 1025-27; *Cassady v.* Goering, 567 F.3d 628, 636 (10th

Cir. 2009) (holding impermissibly overbroad a warrant authorizing seizure of "[a]ny and all

illegal contraband"); *United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2005) (holding that a

warrant was insufficiently particular because it was not limited to documents from the time

period for which the magistrate had probable cause to believe fraud had occurred); *United States

v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999) ("Failure to limit broad descriptive terms by relevant

dates, when such dates are available to the police, will render a warrant overbroad."); *United

States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (affirming invalidation of warrant authorizing

seizure of "virtually every document and computer file at HK Video"); *United States v. Bianco,*

998 F.2d 1112, 1115 (2d Cir. 1993) (warrant lacked particularity where it authorized the seizure

of all "notes, Ledgers, Envelopes, Papers, and Records");*United States v. George*, 975 F.2d 72,

75 (2d Cir. 1992) (holding overbroad a warrant authorizing search of "any other evidence

relating to the commission of a crime"); *Center Art Galleries-Hawaii, Inc. v. United States*, 875

F.2d 747 (9th Cir. 1989) (invalidating warrant to seize all records of art gallery suspected of

---

[3] The Fourth Amendment applies with equal force to searches of computer hard drives and the seizure of electronic data, in addition to more traditional searches and seizures. A computer storage medium is analogized to a container, and computer files to separate items within the container. *See United States v. Irving*, 2003 U.S. Dist. LEXIS 16111, 2003 WL 22127913, at *5 (S.D.N.Y. Sept. 5, 2003) (collecting cases), *aff'd on other grounds*, 452 F.3d 110, 2006 WL 1735582 (2d Cir. Jun 23, 2006); *United States v. Al-Marri*, 230 F. Supp. 2d 535, 541 (S.D.N.Y. 2002) (citing *United States v. Runyan*, 275 F.3d 449, 458 (5th Cir. 2001) and *United States v. Barth*, 26 F. Supp. 2d 929, 936 (W.D.Tex. 1998)).

fraud in regard to one artist's work); *United States v. Leary*, 846 F.2d 592, 601 (10th Cir. 1988) (holding impermissibly overbroad a warrant authorizing search of company offices and seizure of all records and communications "relating to the purchase, sale and illegal exportation of materials" in violation of federal export laws); *United States v. Buck*, 813 F.2d 588, 590 (2d Cir. 1987) (warrant insufficiently particular where it authorized the seizure of "any papers, things or property of any kind," despite the fact that the warrant contained a description of the crime); *United States v. Washington*, 797 F.2d 1461, 1472 (9th Cir. 1986) ("where a business is searched for records, specificity is required to ensure that only the records which evidence crime will be seized and other papers will remain private."); *Voss v. Bergsgaard*, 774 F.2d 402, 405 (10th Cir. 1985) (holding impermissibly overbroad a warrant in a tax fraud investigation authorizing seizure of "all business records"); *Spilotro*, 800 F.2d at 965 (warrant based on an affidavit describing "a few stolen diamonds" could not validly authorize a search for a broad category of "gemstones and other items of jewelry" because such a warrant would "provide [] no basis for distinguishing [the stolen] diamonds from others the government could expect to find on the premises."); *Stubbs*, 873 F.2d at 211 (probable cause to search for documents pertaining to "certain aspects of [an] operation" cannot justify the seizure of all documents in an office); *United States v. Vilar*, No. S3 05 Cr. 621 (KMK), 2007 U.S. Dist. LEXIS 26993, 2007 WL 1075041 (S.D.N.Y. Apr. 4, 2007) (finding overbroad a warrant authorizing seizure, without date restriction, of *all* investment advisory agreements, and *all* documents concerning communications with clients, regardless of whether those documents had any relation to the funds, accounts, and individuals addressed by the warrant application); *United States v. Hickey,* 16 F. Supp. 2d 223, 240 (E.D.N.Y. 1998) (offending warrants "directed the seizure of 'all business records'"); *United States v. Gigante,* 979 F. Supp. 959, 966-67 (S.D.N.Y. 1997)

16

(finding an impermissible "general" warrant where warrant authorized seizure of all "financial,

banking, safe deposit, investment, asset, tax, bookkeeping, and accounting records").

Moreover, in respect of the government's seizure of Mr. Young's electronic devices,[4]

additional Fourth Amendment rules apply that were not complied with in the warrants.  The

cases and commentary draw a distinction between the electronic storage device itself and the

information which that device contains.  *Vilar*, 2007 U.S. Dist. LEXIS 26993 at \*117.  Thus,

where the government attempts to seize the information stored on a computer, as opposed to the

computer itself, the underlying information must be identified with particularity and its seizure

independently supported by probable cause.  *See*, *e.g.*, *United States v. Carey,* 172 F.3d 1268,

1275 (10th Cir. 1999) ("Officers [should] specify in a warrant which type of files are sought.");

*United States v. Riccardi,* 405 F.3d 852, 862-63 (10th Cir. 2005) (holding that warrant which

"permitted the officers to search for anything -- from child pornography to tax returns to private

correspondence," was "precisely the kind of wide-ranging exploratory search that the Framers

intended to prohibit" (internal quotations omitted)); *United States v. Hunter,* 13 F. Supp. 2d 574,

584-85 (D. Vt. 1998) (invalidating a warrant for failure to identify with particularity the

underlying information to be seized from devices); *In re Grand Jury Subpoena Duces Tecum

Dated Nov. 15, 1993,* 846 F. Supp. 11, 12 (S.D.N.Y. 1994) (holding, in the context of a grand

jury subpoena, that specificity is required with respect to the categories of information requested,

not merely the storage devices).

Indeed, the government's own published practices demand this level of particularity, as

set forth in a 2009 manual issued by the United States Department of Justice, Criminal Division.

*See* Computer Crime and Intellectual Prop. Section, Crim. Div., U.S. Dep't of Justice, Searching

---

[4] Among other items, the government seized from Mr. Young's home: iPods, flash and thumb drives,
CDs, laptops, hard drives, and digital cameras.

and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations (2009),

available at http://www.justice.gov/sites/default/files/criminal-

ccips/legacy/2015/01/14/ssmanual2009.pdf, ("DOJ Manual"). The DOJ Manual instructs agents

that "when probable cause to search relates in whole or in part to information stored on the

computer, rather than to the computer itself, the warrant should identify that information with

particularity, *focusing on the content of the relevant files rather than on the storage devices*

*which may happen to contain them*." DOJ Manual, p. 72 (emphasis added).  Further, "[a]gents

should be particularly careful *when seeking authority to seize a broad class of information.*

*Agents cannot simply request permission to seize 'all records' from an operating business unless*

*agents have probable cause to believe that the criminal activity under investigation pervades the*

*entire business*." *Id.*, p. 73 (emphasis added).  The DOJ Manual also advises agents to specify the

"time frame of the records involved." *Id.*

Here, among other things, the warrants authorized seizure from Mr. Young of "*all*

*cellular phones, smart phones, electronic data processing and storage devices, computers and*

*computer systems, keyboards, and other associated peripherals, Central Processing Units,*

*external and/or internal drives, portable drives* . . . ." (Smith Decl., Exh. 1-6.)  These are not

particularized warrants. They do not contain a time frame.  And while the descriptions of the

electronic devices to be seized make a vague effort to link them to the other categories of

information to be seized, this is insufficient because, as explained above, those other categories

are themselves unparticularized.  *Id.*  The search warrants gave law enforcement "'free reign to

ransack and take what they like.'" *Williams*, 593 F.3d at 520 (*quoting Phillips*, 588 F.3d 218,

2009 WL 4061558, at *9).  Accordingly, all these documents, records, and electronic devices

should be suppressed.

> **D.     Various Unduly Prejudicial Items Seized Outside the Scope of the Warrants Should Be Suppressed**

As overbroad as the search warrants are, the government still managed to seize various items outside of their scope.  These items are highly prejudicial and should be suppressed.

As discussed above, the government seized, *inter alia*, Nazi paraphernalia and a Confederate flag from Mr. Young's home.  The government has committed to using such evidence at trial despite its manifest irrelevance and undue prejudice.  But the search warrants do not authorize the seizure of such items, under any of the broad seizure categories.  (Smith Decl., Exh. 1-6.)  On that basis alone they should be suppressed.  *Williams*, 592 F.3d at 520 (if documents or objects not covered by the warrant are improperly seized, "the government should promptly return [them] or the trial judge should suppress them").

Any attempt to contrive an argument for how the warrants authorize the seizure of these items only underscores that their irrelevance to this case is matched only by their unduly prejudicial effect.  Any attempt to paint Mr. Young as a neo-Nazi or white-nationalist sympathizer immediately raises the question of how one person could simultaneously support anti-American radical Islamists, on the one hand, and American white-nationalists, on the other.  But the Court does not even need to ponder this strange "theory of the case": Mr. Young collected many pieces of war memorabilia – not just Nazi-related – *which the government evidently selectively chose not to seize*.

These items were not authorized for seizure by the warrants and should be suppressed.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the following items seized from Mr. Young's residence, backpack, truck, and workplace locker should be suppressed: (1) documents and records pertaining to travel, international transfer of money, any account with any service provider,

contact lists, and all electronic devices; (2) all firearms, ammunition, body armor, and military-style equipment; and (3) items seized outside the scope of the warrants, including Nazi paraphernalia and the Confederate flag.

Dated: February 15, 2017

**DAVID B. SMITH, PLLC**

*/s/ David B. Smith*
David B. Smith (VA Bar No. 25930)
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

*/s/ Nicholas D. Smith*
Nicholas D. Smith (admitted *pro hac vice*)
7 East 20th Street
New York, NY 10003
Phone: (917) 722-1096
nds@davidbsmithpllc.com

20

## <u>Certificate of Service</u>

I hereby certify that on the 15th day of February, 2017, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

> AUSA Gordon D. Kromberg
> U.S. Attorney's Office
> 2100 Jamieson Avenue
> Alexandria, Virginia 22314
> gordon.kromberg@usdoj.gov

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

> */s/ David B. Smith*
> David B. Smith
> VA Bar No. 25930
> David B. Smith, PLLC
> 108 North Alfred Street
> Alexandria, Virginia 22314
> (703) 548-8911 / Fax (703) 548-8935
> dbs@davidbsmithpllc.com