1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA        .       Criminal No. 1:16cr265
                                .
     vs.                        .       Alexandria, Virginia
                                .       June 21, 2019
NICHOLAS YOUNG,                 .       11:46 a.m.
                                .
            Defendant.          .
                                .
. . . . . . . . . .             .

TRANSCRIPT OF RESENTENCING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:             JOHN T. GIBBS, AUSA
                                GORDON D. KROMBERG, AUSA
                                EVAN N. TURGEON, SAUSA
                                United States Attorney's Office
                                2100 Jamieson Avenue
                                Alexandria, VA 22314


FOR THE DEFENDANT:              JESSICA N. CARMICHAEL, ESQ.
                                Ayotte Carmichael Ellis &
                                Brock, PLLC
                                108 North Alfred Street
                                1st Floor
                                Alexandria, VA 22314


ALSO PRESENT:                   SA NICHOLAS CASLEN


OFFICIAL COURT REPORTER:        ANNELIESE J. THOMSON, RDR, CRR
                                U.S. District Court, Fifth Floor
                                401 Courthouse Square
                                Alexandria, VA 22314
                                (703)299-8595


(Pages 1 - 24)


COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

1              P R O C E E D I N G S

2         THE CLERK:  Criminal Case 16-265, United States of

3  America v. Nicholas Young.  Will counsel please note their

4  appearances for the record.

5                    (Defendant present.)

6         MR. KROMBERG:  Good morning, Your Honor.  Gordon

7  Kromberg, John Gibbs, Evan Turgeon for the United States.  With

8  us at counsel table is FBI Special Agent Nicholas Caslen.

9         THE COURT:  Good morning.

10        Ms. Carmichael, you're here for the defendant?

11        MS. CARMICHAEL:  Yes, Your Honor.  Jessica Carmichael

12 on behalf of Mr. Young.  He is now present.

13        THE COURT:  All right.  All right, this matter comes

14 on for a resentencing.  This case was tried to a jury, which

15 convicted the defendant of all three counts that were before

16 them.  On appeal, the Court of Appeals affirmed the conviction

17 for attempted -- the offense of attempting to provide material

18 support to a terrorist organization but found that there was an

19 insufficient nexus between the false statements made by the

20 defendant and an actual proceeding, and therefore, under the

21 technical requirements for the obstruction statutes which were

22 also involved in the case, the Court of Appeals vacated those

23 two convictions and remanded the case back to the Court solely

24 for the issue of resentencing on the attempted production of

25 material support to a terrorist organization.  We're not

3

1   readdressing in any respect the underlying conviction for that

2   count, simply to reevaluate the sentencing.

3          It's been briefed -- the issues have been briefed

4   extensively.  Quite frankly, Mr. Kromberg, I don't think the

5   government actually responded to the specific arguments that

6   were made in Ms. Carmichael's sentencing brief.  Do you want to

7   address any of the specific things that she raised?

8          MR. KROMBERG:  Judge, I think what was raised was

9   that Mr. Young has changed or grown or matured.  I don't think

10  that that is something that has been established.  The letters

11  that have been sent to the Court still say, oh, he was only

12  doing a favor for a friend.

13         THE COURT:  Yeah.

14         MR. KROMBERG:  That's not what this case was about.

15  This case was he sent money so that fighters could be brought

16  to ISIS to murder and enslave other people.  That's what

17  happened here.

18         What happened here -- there's been no indication of

19  acceptance of responsibility for his conduct.  There hasn't

20  been a change.

21         I've done some thinking about this case over the last

22  year and a half, and I've become more and more inclined to

23  believe that, that what happened here was that this was an

24  effect of using steroids, and it caused a change in Mr. Young's

25  personality.  He became paranoid.  A year-and-a-half ago, we

4

1  heard about posttraumatic stress disorder.  There's been no

2  indication that that is not still here and that that has been

3  addressed.  The posttraumatic stress disorder, did it come from

4  fighting in Libya, or did it come from the paranoia that came

5  from taking steroids to become a body builder?  But the

6  paranoia that caused him to hate and to -- and to be attracted

7  to Nazism and to be attracted to ISIS, that hasn't been

8  addressed.

9       So, Judge, the conduct of conviction is identical.

10 Not a thing has changed.  Your Honor wrote that nothing has

11 changed.  The guidelines are the same.  The offense of

12 conviction is the same.  Nothing has changed with any factor

13 for the, for the defendant's sentence.  So we think that the

14 sentence that the Court imposed before should be the sentence

15 that the Court imposes now.

16      THE COURT:  All right.

17      MR. KROMBERG:  Thank you.

18      THE COURT:  Ms. Carmichael?

19      MS. CARMICHAEL:  Your Honor, first I just wanted to

20 address the pre-sentence report and the guidelines.  Your

21 Honor, the guidelines -- well, first of all, I have reviewed

22 the pre-sentence report with my client, and the guidelines have

23 changed, Your Honor, because the statutory maximum for this

24 offense is now 240 months.

25      THE COURT:  Well, the statutory maximum was always

1    240 months for this particular offense.

2            MS. CARMICHAEL:  Correct, Your Honor.

3            THE COURT:  That has not changed.

4            MS. CARMICHAEL:  Correct, Your Honor.  But under the

5    guidelines calculation in the pre-sentence report, the

6    guidelines calculation now states 240 months.

7            THE COURT:  Well, that's correct.  I mean, the

8    offense level as has been calculated is a level 40.  The

9    defendant has a criminal history VI based on the way the

10   guidelines work.  The actual guideline range, the guideline

11   range is 360 to life, but the statutory maximum, in other

12   words, the Court cannot sentence above the 240 months, which is

13   the 20 years, which is the maximum for this statute.

14           There's still one to three years of supervised

15   release, although again, for the statute of conviction, up to

16   life is possible for supervised release because of the nature

17   of this offense.  The fine range is 50,000 to 250,000, and a

18   $100 special assessment.

19           Those are the guidelines that are now calculated

20   because of the other two counts not being there.

21           MS. CARMICHAEL:  Yes, Your Honor.  And for

22   preservation of the record, I'd submit on my brief with respect

23   to the guidelines objections.

24           THE COURT:  Well, you've raised several issues, and I

25   think they do need to be addressed by the Court, so we're going

1    to start with them.  Your first objection is to the -- you're

2    not objecting to the base offense level, as I understand it,

3    under 2M5.3(a), which is a level 26.

4             MS. CARMICHAEL:  Correct, Your Honor.

5             THE COURT:  You are objecting to the specific

6    characteristics enhancement of two levels under 2M5.3(b)(E),

7    and that, that increases the offense level the two levels if

8    there's a provision of funds or other material support or

9    resources with the intent, knowledge, or reason to believe that

10   they're to be used to commit or assist in the commission of a

11   violent act.

12            Now, I agree with Mr. Kromberg that nothing in the

13   letter that your client wrote at the original sentencing and

14   nothing you've indicated in your paperwork changes the fact

15   that your client keeps talking about these gift cards as if

16   they were an accommodation to a friend's request, I'm just

17   giving you a present, and you know the evidence in this case

18   does not support that; that the evidence in this case, and it's

19   evidence accepted by the Court of Appeals, it's in their

20   opinion, is that Mo, who was acting, your client believed him

21   to be a person who was going to try to join ISIS, communicated

22   with him that ISIS needed these Threema apps, which was a

23   way -- a clandestine way of communicating with fighters, either

24   to solicit fighters or to give fighters directions.

25            Your client went out and he bought himself a Threema

1    app and communicated with Mo, the informant, through that, and

2    purposely bought these Google gift cards which are then used to

3    get the Threema apps.  And there's even after he believes he's

4    delivered them to Mo, who he believes is working with ISIS, he

5    at that point sends back an e-mail saying, "Good," when he

6    hears that they've been received.

7         That's the evidence in this case.  And so this was

8    not just giving a gift to a friend.  So I think that there's no

9    question under the facts of this case that that two-level

10   enhancement is proper.

11        You've also objected -- and I do think it's

12   interesting that this next objection was never made in the

13   original case, because I looked at the -- I looked at the

14   original briefs filed by Mr. Smith, and I looked at the

15   appellate briefs, because the sentence was an issue that was

16   raised on appeal, and in neither of those was the 12-level

17   enhancement for being related to the crime of terrorism, that

18   was not raised below.

19        You've raised it this time, because that, that

20   particular enhancement also bumps up the criminal history from

21   a I to a VI, and I -- that's the enhancement under 3A1.4(a),

22   the terrorism enhancement.

23        I do think that that enhancement does strange things

24   to criminal history, and I, frankly, don't have a problem,

25   because you've made this argument, that the criminal history is

1    misrepresented by that, but even with a criminal history I,

2    with an offense level 40, it doesn't change the fact that the

3    guidelines are above the 240 months, so that's purely

4    aesthetic, and I'm not going to bother changing it, but I'm

5    just saying that again, for the reasons I've just stated, that

6    enhancement is perfectly appropriate under the facts of this

7    case.

8            And again, the Fourth Circuit in their opinion

9    adopted -- or lists all of these facts, and so I don't think

10   there's any question that on this record, the guidelines are

11   properly calculated.

12           And the last issue that you raised, unless I've

13   missed one, is you thought that -- you've argued that the

14   defendant should get the three-level reduction for -- under

15   2X1.1 for inchoate crime, but as you know there, if a defendant

16   has completed all the acts that would complete the crime and

17   believes that he's committed all those acts, then he's not

18   entitled to that.

19           And so here again, based upon the facts in the case,

20   there's no question your client, in my view, truly believed

21   that he had done everything he needed to do to get material

22   support to ISIS through this purchase of the Google gift cards

23   that would be used to, to purchase these Threema apps.

24           So for those reasons, I'm denying your arguments that

25   the guidelines are miscalculated by the Probation Office, and

9

1    we will go with the guidelines that are in the current version

2    of the pre-sentence report.  All right?

3                MS. CARMICHAEL:  Thank you, Your Honor.  And I'd also

4    submit on the brief with respect to the sentencing entrapment

5    argument.

6                THE COURT:  All right.  Well, again, this is a case

7    where I do not find that sentencing entrapment occurred

8    because, number one, to begin with, this defendant was involved

9    back, I think, as early as 2010 with very problematic people.

10               I think, isn't it Chesser he was first associated

11   with, Mr. Kromberg?

12               MR. KROMBERG:  That is correct, Your Honor.

13               THE COURT:  So the whole way in which law enforcement

14   even started to look at your client was because he was picked

15   up during the Chesser investigation.  And Chesser, by the way,

16   got a 300-month sentence from this Court, and one of the counts

17   of conviction in the *Chesser* case was for material support, and

18   so -- and he got 120 months on that one.  So that was a related

19   case in some respects, and Chesser got other counts as well.

20               So your client was first picked up by law

21   enforcement, no entrapment there at all, because he was

22   associating with Chesser.  Then the government did have their

23   undercover person at that point start interacting with the

24   defendant.

25               The defendant went to Libya completely on his own.

1    There was no government involvement with that.  The group he

2    associated with in Libya, the Fourth Circuit again acknowledged

3    that that was connected to ISIS.  All of that was going on

4    without any government involvement.

5           And I find that there was no entrapment in this case,

6    that the defendant's conduct and the way in which the

7    government conducted the investigation was not inappropriate

8    given the very serious issues that they had a right to

9    adequately probe.  So I'm overruling that objection as well.

10   All right?

11          MS. CARMICHAEL:  I understand, Your Honor.  May I

12   proceed with, with argument?

13          THE COURT:  Go ahead.

14          MS. CARMICHAEL:  Your Honor, first as an initial

15   matter, I'd just like to acknowledge Mr. Young's family and his

16   friends who are in the courtroom here today.  As Your Honor

17   well knows, this case has been going on for years at this

18   point, and these individuals have been supportive and have

19   their faith in Mr. Young every step of the way.

20          But the, the repetitious and the fear-driven imagery

21   that the government portrays in its memo is disproportionate to

22   the manufactured offense, Your Honor.  It's a distorted view of

23   an individual who called ISIS a bunch of criminals, and its

24   portrayal is incongruent with Mr. Young's true character, which

25   is recounted by people who know him best, through their

1    letters.

2          But, Your Honor, I don't want to stand here and

3    re-litigate all of the -- every aspect of this case.  Your

4    Honor knows this case well.  Your Honor knows that there were

5    counterpoints made to every point that the government made

6    throughout this case.

7          The fatal aspect of the government's position, Your

8    Honor, is that it says nothing has changed, and it has, Your

9    Honor, and there's one, one aspect that I touched on in the

10   guidelines objections but I wanted to address more fully with

11   this Court, which is the fact that Mr., Mr. Young now has a

12   statutory maximum sentence of 20 years, and a sentence of 15

13   years is jarringly close to that statutory maximum, and

14   statutory maximum sentences are reserved for the worst

15   offenders that are in this category of crime.

16         And so when we look at Mr. Young's criminal conduct,

17   his only criminal conduct -- and I'm not talking about the rest

18   of his behavior at this time; I will address that in a

19   minute -- but his only criminal conduct, sending $245 gift

20   cards to a confidential informant, that is on the low end of

21   the spectrum of conduct that is covered by this statute.

22         A sentence of 15 years is very close to the statutory

23   maximum reserved for someone who violates this statute by

24   committing very violent acts, and we think it's important for

25   Your Honor to consider that.

1          But, of course, the criminal conduct is not the only

2     factor that Your Honor must consider, and I think that's where

3     this case presents sort of a unique circumstance because

4     typically, Your Honor, it's the government that's asking the

5     Court to look only at the criminal conduct in a case, and it's

6     the defense that is asking the -- is asking the Court to

7     address all of the 3553(a) factors and to look at the whole

8     individual, but that's not the way that it's worked in this

9     case, Your Honor.  The government is asking this Court to take

10    selective view of artifacts that were tediously plucked from

11    the entire spectrum of Mr. Young's life to justify a lengthy

12    sentence.

13          Now, Mr. Young's concealing facts from the FBI was

14    wrong, but it was not criminal behavior, and it should be

15    weighed appropriately against all the other 3553(a) factors.

16    So, Your Honor, Mr. Young's concealing facts from the FBI

17    should be weighed against his 13 years of service protecting

18    our community as a law enforcement officer.

19          And his poor humor and tasteless rhetoric, it should

20    also be balanced against the 30-plus years that he has shown

21    immense thoughtfulness and devotion to his friends and family.

22          And his lawful collection of firearms, body armor,

23    and military artifacts, Your Honor, we ask that -- we ask that

24    you weigh that against the countless letters that show he was

25    compassionate, selfless, and sensitive towards others.

1           And actually, Mr. Onorato touched on this earlier,

2    but sentencing is usually about the bad things that people do,

3    and certainly Mr. Young has made some poor decisions, but he's

4    also made some very good decisions in his life, Your Honor,

5    towards people that are very close to him.  If all of us were

6    judged on the poorest decisions we ever made in our lives, then

7    the world would be a pretty dark and lonely place.

8           So we ask that the Court give a balanced perspective

9    to the government's 3553(a) factors and Mr. Young's 3553(a)

10   factors and not afford more weight to the government's, Your

11   Honor.

12          But there's something else that has changed, and I

13   addressed this in my memo as well, and that is a sentencing

14   disparity issue.  Since the time when Mr. Young was sentenced,

15   it appears that some courts across the country have been

16   gaining a new perspective when sentencing this type of crime,

17   and I cited a few of these cases in my brief, but there was the

18   one from Colorado, a gift card case similar to this case, in

19   which that defendant received a sentence of time served.

20          And the First Step Act, Your Honor, has been enacted

21   since Mr. Young was last before the Court, and that's created

22   yet another disparity, Your Honor, because the sentence that,

23   that you just gave the last defendant in this courtroom, Your

24   Honor, that defendant has the opportunity now to receive earned

25   time credits, to get even more time off of his sentence.

1          That, that is not an option for Mr. Young because of

2     the time that he -- because of the type of crime that he, that

3     he committed.  And so, Your Honor, we'd ask that you take that

4     into account as a disparity.  A 15-year sentence is no longer

5     just a 15-year sentence.  It varies from person to person.

6          And finally, Your Honor, I just wanted to say a note

7     about the deterrence factor.  I -- they cited an overwhelming

8     amount of research in my brief, but the research has been

9     overwhelming.  It's overwhelmingly shown that a short but

10    definite sentence has the most deterrent effect, and that

11    deterrent effect does not increase with the length of

12    incarceration.

13         We are not asking the Court to blindly put its faith

14    in Mr. Young.  Mr. Young, as the Court noted, could be

15    supervised for a lifetime, Your Honor.  The Court can keep tags

16    on his computer, drug testing, home visits.  This is not a

17    situation in which Mr. Young would be left unsupervised, and in

18    that sense, Your Honor's sentence of greater than 60 months is

19    greater than necessary to achieve the goals of sentencing.

20         Your Honor, Mr. Young has lost pretty much everything

21    in his life that he holds dear, but he still has a lot more to

22    offer his community and his family.  And it is not just

23    Mr. Young who sits here suffering today, Your Honor.  His

24    family is suffering deeply.  Ashley Young has lost her only

25    brother, and their mother has lost her only son.

1          A decade of Mr. Young's life is worth saving, Your

2    Honor, and Mr. Young is going to address this Court and ask for

3    that chance.

4          THE COURT:  All right.  Does the government want to

5    respond to anything said by Ms. Carmichael at this point?

6          MR. KROMBERG:  No, Your Honor.

7          THE COURT:  All right.  All right, Mr. Young, come up

8    to the lectern.  This is your chance to say anything you'd like

9    the Court to consider before sentencing is imposed.

10         THE DEFENDANT:  Thank you, Your Honor.  Your Honor,

11   I'm grateful for this opportunity to stand before you with

12   another chance.  I know it does not happen to many.  I don't

13   want to waste this moment.

14         The lesson I have learned is apparent to me each day

15   when I wake up in the early hours of the morning.  The four

16   walls I will see will be the same four walls that I will see

17   every day for the next ten years.  Being incarcerated, I found,

18   is a slow death.  It cultivates the despair in individuals as

19   they are forced to live in sweltering and unsanitary

20   conditions.

21         There is not a day that goes by when I'm not acutely

22   aware of my wrongdoing, and I know what I did was wrong.  When

23   a government informant pretending to be my friend informed me

24   that he had joined a designated FTO, I should have defriended

25   him instead of staying in contact with someone that I was led

1  to believe would die in a day.

2          And a year and a half later, I should not have sent

3  him the gift cards that he requested.  I should not have let

4  his pleas, the illusion of the ties of friendship and

5  brotherhood, chance breaking any of the laws of our government,

6  and for that I will always carry shame and regret.

7          I don't want Your Honor to think that I'm just an

8  obstinate person.  I know it was wrong to do that,

9  catastrophically wrong.  In exercising my right to a trial, I

10  realize it may have caused you to think that I deny that, but

11  the truth is and has always been I have so many regrets about

12  sending the gift cards.  That one small moment has now defined

13  the entire rest of my life.  I replay it again and again in my

14  mind in wishing that I had not sent them.

15          I have a great group of family, friends, new and old,

16  coworkers who have stood by me and who have been very

17  supportive, and a job waiting for me upon my release.  Due to

18  my support network, my previous criminal history being zero, I

19  can say with certitude that I will not be stepping foot in

20  another courtroom after my release, and I'm eager to get

21  through my probation and put this behind me as much as I am

22  able.

23          THE COURT:  Well, Mr. Young, your case is -- it's a

24  very troubling case because the evidence during the trial was

25  really, really, really very ugly.  I mean, you're not here just

1    for the gift cards, as you know.  You were a law enforcement

2    officer who on more than one occasion lied to other law

3    enforcement officers.

4            I've looked very carefully at the argument that your

5    lawyer made, especially in terms of, you know, looking at

6    comparisons, and I looked at several other cases that had been

7    in this court, because I think that's the appropriate

8    comparison in terms of whether this sentence was somehow

9    disproportionate, and it's very interesting.  I looked at the

10   Zachary Chesser, Harris Qamar, Mohamed Elhassan, Mohamed

11   Jalloh, Muna Jama, and Ardit Ferisi cases, and these all

12   involved cases with material support or attempted material

13   support to known terrorist organizations, and they ranged

14   basically from the *Chesser* case that got 300 months, the lowest

15   amount was 102 months for Qamar, and those cases, I looked at

16   the age of the defendants, I looked at whether it was by a plea

17   or a trial and some other factors.

18           You were among our oldest defendants, a factor that

19   courts can take into consideration in looking at disparate

20   sentencing, whether somebody is a young offender or an older

21   offender.  Older people are expected to be a bit more mature in

22   their approach to things, and you were among the oldest of the

23   people on that list.

24           The only other one close to you was Jama, who was 36

25   years old.  Jama had the bench trial with Judge Trenga.  He got

1   144 months, but he was not a law enforcement officer.  He had

2   not lied to law enforcement officers as a sworn law enforcement

3   officer.

4           The incredible amount of weaponry that was found in

5   your home, now, it may be legal to own that, but the

6   combination of, what, 18,000 rounds of ammunition, body armor,

7   in combination with the conversations you'd had with the

8   informants, there was evidence at trial about, you know, how to

9   protect yourself if the FBI were to come after you, how you

10  could infiltrate this courthouse and you knew how to do harm.

11          Whether you intended to do it, we don't know, but as

12  you know, disposition was a big issue at the trial, and the

13  jury certainly found that the evidence supported the concerns

14  which the government had throughout this case.

15          So I think that there were a lot of aggravating

16  factors in the underlying case, and I still am not satisfied

17  that there's a genuine belief that what you did in terms of

18  getting these gift cards was all that wrong.  Part of a court's

19  sentence has to not only be to punish conduct, but it has to be

20  to send messages, and in this case, I think given the totality

21  of the facts, it's very important for people to understand that

22  if they intend to provide material support for a terrorist

23  organization, at least in this district, there's a very harsh

24  penalty to be paid.

25          And I also find that people who are in law

1    enforcement who violate their oath of office by, among other

2    things, engaging in illegal conduct and by lying to law

3    enforcement, also have to recognize that there's penalties to

4    be paid for that.

5            I have given you previously a variant sentence.  I

6    notice, by the way, whether it meant anything or not, I don't

7    know, but the Fourth Circuit in their opinion even noted that

8    it was a below-guideline-sentencing sentence.  And I'm still

9    satisfied that the 15-year sentence imposed previously was

10   sufficient but not greater than necessary to achieve all the

11   appropriate purposes of 3553(a) and taking into full

12   consideration the facts of this case.

13           So the Court is going to impose a sentence of 15 --

14   of, sorry, of 180 months in the custody of the Bureau of

15   Prisons, with credit for all the time that's been served on

16   that sentence, and that sentence will be followed by supervised

17   release, and the term of supervised release will be -- I'm not

18   going to change that term.  I, frankly, believe I could have

19   increased it, but I'm not going to.  So it's going to be 15

20   years of supervised release.

21           The terms and conditions of the supervision are first

22   of all your uniform good behavior, which means you're not to

23   violate any federal, state, or local laws, which includes

24   traffic laws.

25           Do you understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  You are required to, to follow all the

3    conditions of supervision that will be explained to you by the

4    probation officer and that will also be printed on the judgment

5    order.  Do you understand that?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Now, as special conditions, you must

8    first of all be drug free and submit to mandatory drug testing.

9    You will have to satisfactorily participate in and complete any

10   inpatient or outpatient drug treatment to which the -- you are

11   directed by the Probation Office.  You will have to waive any

12   rights of confidentiality regarding drug treatment so that the

13   treatment people can release that information to the Probation

14   Office so that they can monitor your compliance, and the Court

15   will require you to pay all costs as able for the testing and

16   the treatment.

17         Do you understand that?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Secondly, the Court wants you to as a

20   condition of supervision, to undergo a mental health evaluation

21   and, if recommended, participate in a program approved by the

22   United States Probation Office for mental health treatment,

23   which can include both residential treatment, the taking of

24   medications, and you'll have to waive any privacy rights that

25   you have to the treatment program so that the Probation Office

1    can monitor your full compliance.

2              Do you understand that?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  You'll have to pay the costs as able

5    again as directed by the Probation Office.  Do you understand

6    that?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  You are barred from associating or

9    communicating with any known terrorists or terrorist

10   organization, including any individuals involved in the instant

11   offense, and all communications, including electronic or

12   telephonic, with such individuals or groups are prohibited.

13             Do you understand that?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  You must comply with the requirements of

16   the computer monitoring program as administered by the

17   Probation Office.  You must consent to the installation of

18   computer monitoring software on any computer to which you have

19   access.  Installation shall be performed by the probation

20   officer.

21             The software may restrict and/or record any and all

22   activity on the computer, including the capture of keystrokes,

23   application information, internet use history, e-mail

24   correspondence, and chat conversations.  A notice will be

25   placed on the computer at the time of installation to warn

1    others of the existence of the monitoring software.

2              And you must notify others of the existence of the

3    monitoring software.  You shall not remove, tamper with,

4    reverse-engineer, or in any way circumvent the software, and

5    the costs of the monitoring shall be paid by you to the extent

6    you are able.

7              Do you understand that?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Now, I also want to make sure you

10   understand, because over time, there may be other types of

11   interactive devices besides computers, and so you need to

12   understand that this may apply to cell phones or any other

13   communicative device.

14             Do you understand that?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  And lastly, you are not permitted to

17   possess any destructive weapons, firearms, knives, or body

18   armor.  Do you understand that?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  The Court is finding again that you are

21   unable to afford the costs of incarceration, any other costs of

22   supervision, or the statutory fines, but the $100 special

23   assessment that was previously imposed must be paid.  If that's

24   been paid already, we'll have that marked.  If it hasn't been

25   paid, then it needs to be.

1          I want to advise you that you have a right to appeal

2   this sentence, not your conviction because that's been already

3   resolved by the Court of Appeals, but if you want to appeal

4   this sentence, you must file a notice of appeal within 14 days.

5   You have a right to be represented by counsel on such an

6   appeal.

7          And, Ms. Carmichael, if the defendant chooses to

8   appeal, I think the Fourth Circuit should probably appoint you

9   since you know the case.  All right?

10          MS. CARMICHAEL:  Thank you.

11          THE COURT:  But I think they have to do that.

12          Is there any further we need -- anything further we

13   need to address?

14          MS. CARMICHAEL:  May I confer with my client briefly?

15          THE COURT:  Yes.

16          (Discussion between Ms. Carmichael and the defendant

17   off the record.)

18          MS. CARMICHAEL:  Your Honor, may we have a

19   recommendation that Mr. Young return to the Petersburg

20   facility?

21          THE COURT:  I hope that that hasn't been displaced by

22   this proceeding.  Has it been?

23          MS. CARMICHAEL:  I really don't know the answer to

24   that question, Your Honor.  I would assume not, but I have no

25   information to base that on.

24

1          THE COURT:  Does the government have any reason to

2   believe he wouldn't go back to Petersburg?

3          MR. KROMBERG:  We have no information one way or

4   another, Judge, but I certainly have no reason to believe he

5   wouldn't.

6          THE COURT:  All right.

7          MR. KROMBERG:  But I don't know.

8          THE COURT:  I will recommend on the judgment order

9   that he be returned to FCI Petersburg, all right?

10          MS. CARMICHAEL:  Thank you, Your Honor.

11          THE COURT:  Anything further?  No?

12          MR. KROMBERG:  No, Your Honor.

13          THE COURT:  The defendant is remanded.  Thank you.

14                    (Which were all the proceedings

15                     had at this time.)

16

17              CERTIFICATE OF THE REPORTER

18      I certify that the foregoing is a correct transcript of

19   the record of proceedings in the above-entitled matter.

20

21

22          _____
                         /s/
23                Anneliese J. Thomson

24

25